UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK JOHNSON,
o/b/o E.J., a minor,                    CIVIL ACTION NO. 06-11816

       Plaintiffs,                DISTRICT JUDGE DENISE PAGE HOOD

  v.                                MAGISTRATE JUDGE VIRGINIA M. MORGAN

JO ANNE B. BARNHART,
COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that plaintiffs' motion be granted and that the Commissioner's motion be denied.

### II. Background

On September 30, 2002, plaintiff Roderick Johnson filed an application for Supplemental Security Income (SSI) on behalf of his son, E.J., who was nine years of age at the time. (Tr. 43-45)  Mr. Johnson stated in the application that E.J. had special educational needs and that he had difficulty understanding and listening to instructions. (Tr. 55)

The Social Security Administration (SSA) denied the claim on January 7, 2003.  (Tr. 26-29)  Mr. Johnson then requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 30)  On October 21, 2004, plaintiffs appeared, with counsel, at a hearing before ALJ Douglas N. Jones.  (Tr. 214-46)

On February 15, 2005, the ALJ issued a decision denying the claim.  (Tr. 15-22)  The ALJ determined that E.J. had a cognitive disorder with learning delays, an anxiety order, N.O.S., and a congenital heart anomaly, and that his impairments were "severe" within the meaning of 20 C.F.R. § 416.924(c), but that he did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled any impairment listed in Appendix 1 of the Social Security Regulations, 20 C.F.R. Pt. 404, Subpt. P., App. 1.[1]  Accordingly, the ALJ concluded that E.J. was not "disabled" within the meaning of the Social Security Act.

Plaintiffs filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 11-14)  The Council denied the request on March 29, 2006.  (Tr. 5-7)  The ALJ's decision thus became the final determination of the Commissioner.  On April 17, 2006, plaintiffs filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.

---

[1]The ALJ determined that E.J.'s congenital heart anomaly "generate[d] no significant functional limitations."  (Tr. 19)

### III.  Legal Standards

#### A.  Disability Evaluation

The Social Security Act provides that a person under the age of 18 "shall be considered disabled...if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  A three-step, sequential evaluation process is used to determine SSI claims involving minors.  That process, which is set forth at 20 C.F.R. § 416.924(a), is as follows:

> We follow a set order to determine whether you are disabled.  If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further.  If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have a combination of impairments that is severe.  If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further.  If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings.  If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled.  If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

#### B.  Judicial Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

> irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV.  Analysis

As indicated above, the ALJ concluded that E.J.'s impairments did not meet, medically equal, or functionally equal a listed impairment. Plaintiffs raise no objections to the ALJ's conclusion that E.J.'s impairments do not meet or medically equal a listed impairment, but contend that the ALJ erred in determining that E.J.'s impairments do not functionally equal a listed impairment.

If a claimant's impairments do not meet or medically equal a listed impairment, the claimant may still be found to be disabled if his impairments functionally equal a listed impairment. Six "domains" are examined in determining whether an impairment or combination

of impairments functionally equals a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a.  The regulations provide that in order for an impairment or combination of impairments to functionally equal a listed impairment, "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  Id.

The ALJ concluded that E.J. had no limitations in the domains of health and physical well-being and moving about and manipulating objects, less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and caring for oneself, and marked limitations in the domain of interacting and relating with others.  (Tr. 20-21)

Plaintiffs contend that in addition to having marked limitations in the domain of interacting and relating with others, as found by the ALJ, E.J. has marked limitations in the domain of attending and completing tasks and, therefore, that functional equivalence exists.  In the alternative, plaintiffs contends that functional equivalence exists because E.J. has extreme limitations in the domain of interacting and relating with others.

Turning to plaintiffs' first argument, the domain of attending and completing tasks involves consideration of "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish activities, including the pace at which you perform activities and ease with which you change them."  20 C.F.R. § 416.926a(h).  The regulations set forth several examples of limited functioning in this area:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
>
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
>
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
>
> (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3). The ALJ stated the following regarding E.J.'s limitations in this domain:

> The second domain refers to how well a child can focus and maintain attention. It also refers to how well a child begins, carries through, and finishes activities, including the pace at which a child performs activities and ease with which a child can change activities. According to his father, the claimant needs constant supervision and repeated instructions even in making his bed and putting things away. His teachers report that he often needs to be redirected to task and hands in incomplete assignments, but in a Teacher Questionnaire, they indicated that he has "No Problem" in any specific area of this domain, including paying attention when spoken to directly, sustaining attention, focusing long enough to finish an assigned activity, carrying out instructions, completing assignments and working at a reasonable pace. His inattention on recent psychological testing was deliberate and a function of his acting-out and "work[ing] hard to behave inappropriately." The claimant also has less than marked limitation in this domain.

(Tr. 20)

Upon a review of the record as a whole, the court concludes that the ALJ's determination that E.J. has less than marked limitations in the domain of attending and completing tasks cannot

be sustained. Nearly every piece of evidence in the record indicates that E.J. is significantly impaired in this domain. Dr. V. Stewart, Ph.D., a School Psychologist for Flint Community Schools, indicated in a November 29, 2001 report that E.J. was being evaluated "because he rarely finishes his work, he has poor comprehension skills and get[s] frustrated with himself." (Tr. 90) Dr. Stewart further noted that E.J. was growing increasingly frustrated in the classroom due to his poor performance. On October 25, 2001, a therapist observed E.J. in class and noted that he "had to be redirected," that directions had to be repeated, and that he was "touching others." (Tr. 181) In a "Multidisciplinary Evaluation Team Report" dated November 9, 2001, it is stated that E.J.'s "attention span [is] very short" and that he is "impulsive." (Tr. 101)(emphasis in the original). Monica Sebastien-Kadie, a teacher in the Flint Community School District, noted in a "School Activities Questionnaire" dated May 14, 2003, that E.J. had a "[s]hort attention span." (Tr. 74) Connie Edwards, one of E.J.'s teachers indicated in a "School Activities Questionnaire" dated September 23, 2004, that E.J. "[c]onstantly needs to be reminded to start immediately," that he "stares off and often needs to be directed to start now!" (Tr. 149) Ms. Edwards further indicated that E.J. had "difficult[y] staying on task," that he was "easily distracted by noise, others walking," and that he failed to complete assignments. Id. In a subsequent report, Ms. Edwards states that E.J.'s "attention and staying focus is very poor." (Tr. 209) In a "Detention Permission Form" dated October 19, 2004, E.J.'s teacher stated that E.J. "refuse[d] to stop talking during class" and that his "writing assignment was not completed due to talking." (Tr. 88) His therapist(s) at the Catholic Charities of Shiawassee and Genessee Counties noted, at various times, that he was hyperactive and that he exhibited restlessness,

constant motor activity, and difficulty concentrating. (Tr. 120, 126-27, 129-31) Further, school records show that E.J. received poor grades and was performing below his grade level in virtually every subject. (Tr. 93, 101, 175, 176) The fact that psychological testing showed that E.J. had the "cognitive capacity to learn new information and acquire academic skills," suggests that his poor school performance was a result, at least in part, of attention and concentration deficits. (Tr. 90)

In addition, at the hearing, Mr. Johnson testified that on E.J.'s last report card "they said that [he] needed to pay attention and he need[ed] to improve and he have a problem getting along with kids. That's – you know, its practically the same thing every year." (Tr. 224) Mr. Johnson also testified that E.J.'s teachers told him that E.J. was functioning at a first grade level. (Tr. 227-28) E.J. was in sixth grade at the time of the hearing. Mr. Johnson stated that he had to go to E.J.'s school frequently to "sit with" E.J. and to "calm him down" because he was "uncontrollable" at school and "constantly getting into stuff[.]" (Tr. 220-21, 226) Mr. Johnson also indicated that E.J. had difficulties completing his school work. (Tr. 220, 226) The ALJ stated in his opinion that "Mr. Johnson himself lacked the demeanor expected of a credible witness." (Tr. 21) However, the ALJ's statement is mere sophistry. The ALJ provided no explanation for this dubious statement and, in the court's view, Mr. Johnson's testimony is entirely consistent with the record evidence regarding E.J.'s difficulties at school and in relating with others and his tendency toward inappropriate behavior. Moreover, the ALJ's own observations of E.J.'s conduct at the hearing tend to corroborate Mr. Johnson's testimony. The ALJ stated the following shortly after the hearing started:

> Okay. Note for the record that Eddie, ever since he came in here, has been acting somewhat distracted or perhaps nervous. He had his jacket in his mouth when he first came in. He's had his head down in his hands and he's been sort of sucking on his hand. He played with Kleenex, ripped the Kleenex in half. It doesn't appear as if Eddie is, for whatever reason, going to be able to provide much in the way of testimony in this proceeding. Although I note that he appears to be old enough so that the law would at least create a presumption that he knows the difference between right and wrong and the trust and the untruth. He has now covered his head with his jacket and is lying on the table.

(Tr. 218-19) The ALJ further indicated at the end of the hearing that "Eddie is now getting up and doing – moving around, looking as if he's trying a break dancing routine." (Tr. 245) Consistent with the reports of his teachers, therapists, and others, the testimony of Mr. Johnson, and E.J.'s behavior at the hearing, E.J. was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) in 2003, a diagnosis that the ALJ neither discussed nor even acknowledged in his opinion. (Tr. 124, 142)

In concluding that the E.J. had less than marked limitations in the domain of attending and completing tasks, the ALJ relied heavily on a teacher questionnaire dated November 7, 2002. According to the ALJ, the teacher who filled out the questionnaire reported that E.J. had "'No Problem'" in any specific area of this domain, including paying attention when spoken to directly, sustaining attention, focusing long enough to finish an assigned activity, carrying out instructions, completing assignments and working at a reasonable pace." (Tr. 68) While that is indeed what is indicated on the form, it is evident that the teacher misapprehended the form's rating system. With regard to the domain of attending and completing tasks, the teacher checked a box indicating "YES, the child has problems functioning in this domain." (Tr. 68) On a scale

of one to five, with one being "No Problem" and five being "A very serious problem," the teacher gave E.J. an overall rating of four, indicating "A serious problem." (Tr. 68) This rating is consistent with the other evidence of record, as discussed above. However, in each of the 13 individual categories in the domain, the teacher gave E.J. a one rating, indicating that E.J. had no problems in any of the areas that make up the domain.[2] These category ratings do not square with the overall domain rating indicating that E.J. has serious problems attending to and completing tasks. In light of this internal inconsistency, the report provides little support for the ALJ's determination in the domain of attending and completing tasks.

The ALJ also appears to have relied upon the findings of Dr. Paul Liu, D.O., a Michigan Disability Determination Services consulting physician. Dr. Lui concluded that E.J. had less than marked limitations in the domain of attending and completing tasks. (Tr. 107) However, in reaching this conclusion, Dr. Lui appears to have relied heavily, if not exclusively, upon the questionable teacher report on which the ALJ relied. Further, Dr. Lui, who prepared his report on December 30, 2002, did not have the benefit of subsequent school and therapist reports indicating that E.J. was having significant attention and task completion problems. Thus, Dr. Lui's finding in this domain provides little support for the ALJ's conclusion.

---

[2] The 13 categories in the domain are: (1) paying attention when spoken to directly, (2) sustaining attention during play/sports activities, (3) focusing long enough to finish assigned activity or task, (4) refocusing to task when necessary, (5) carrying out single-step instructions, (6) carrying out multi-step instructions, (7) waiting to take turns, (8) changing from one activity to another without being disruptive, (9) organizing own things or school materials, (10) completing class/homework assignments, (11) completing work accurately without careless mistakes, (12) working without distracting self or others, and (13) working at reasonable pace/finishing on time. (Tr. 68)

In addition, the ALJ cited to the report of Dr. Matthew Dickson, a consulting physician who administered a number of psychological tests to E.J. Referring to this report, the ALJ stated that E.J.'s "inattention on recent psychological testing was deliberate and a function of his acting-out and "'work[ing] hard to behave inappropriately.'" (Tr. 20) As indicated by the ALJ, Dr. Dickson found that E.J. was extremely uncooperative and acted inappropriately during testing. (Tr. 182) He concluded that E.J.'s "test results are invalid due to his apparent attempt to under-represent his abilities throughout the exam today." (Tr. 183) Dr. Dickson's observations during the single time he saw E.J. may be probative of the extent of E.J.'s limitations in attending and completing tasks. However, his report, which essentially stands alone, is insufficient to save the ALJ's determination that E.J. is less than markedly limited in the domain of attending and completing tasks \in light of the quantum of evidence indicating that E.J. has significant limitations in this area.

For the reasons set forth above, the court concludes that the ALJ's conclusion that E.J. has less than marked limitations in the domain of attending and completing tasks is not supported by substantial evidence. Accordingly, the Commissioner's disability determination cannot be sustained. The ALJ ignored or overlooked substantial and probative evidence regarding E.J.'s difficulties in this area, relied heavily upon an internally inconsistent report in concluding that E.J. was less than markedly limited, failed to even acknowledge that E.J. had been diagnosed with ADHD, and appears to have even ignored his own observations at the hearing regarding E.J.'s somewhat unusual behavior.

Having concluded that the Commissioner's disability determination is not supported by substantial evidence, the next question that must be addressed is whether this matter should be remanded for further proceedings or for an award of benefits. In <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176 (6th Cir. 1994), the Sixth Circuit explained that "[i]f a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." The Court further stated that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." <u>Id</u>.

Here, all essential factual issues have been resolved and the record adequately establishes that E.J. is entitled to benefits. Functional equivalence exists where the claimant has marked limitations in two domains of functioning. The regulations define a "marked" limitation as one that "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). While this definition provides a less than precise standard for assessing the severity of a claimant's limitations in a particular domain, the evidence is, in the court's view, plainly sufficient to establish that E.J. is markedly impaired in the domain of attending and completing tasks. The observations of his teachers and therapists regarding his classroom behavior, his poor school performance, the testimony of plaintiff, the observations of Dr. Stewart, and the ALJ's own observations regarding E.J.'s behavior point unmistakably to the conclusion that E.J.'s ability to concentrate and maintain sufficient

persistence and pace to complete his school work and other activities is seriously impaired, and there is a lack of substantial evidence to the contrary.  As indicated above, if a claimant has marked limitations in two domains, benefits must be awarded.  The ALJ found that E.J. has marked limitations in the domain of interacting and relating with others, and the court has concluded that he has marked limitations in the domain of attending and completing tasks.  Accordingly, E.J. is entitled to SSI benefits.

**V.  Conclusion**

For the reasons stated herein, the court recommends that plaintiffs' motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for an award of SSI benefits.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
|  | S/VIGINIA M. MORGAN |
|  | VIRGINIA M. MORGAN |
| Dated:  October 16, 2006 | UNITED STATES MAGISTRATE JUDGE |

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 16, 2006.

> s/Kendra Byrd
> Case Manager to
> Magistrate Judge Virginia M. Morgan